1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Peck,<br><br>    Plaintiff,<br><br>v.<br><br>City of Tucson,<br><br>    Defendant. | No. CV-20-00017-TUC-LCK<br><br>**ORDER** |

Pending before the Court is Defendant City of Tucson's Motion for Summary Judgment and supporting Statement of Facts. (Docs. 32, 33.) Plaintiff filed a Response, separate Statement of Facts, and Controverting Statement of Facts (Docs. 34, 38, 42); and Defendant replied (Doc. 45).

## **BACKGROUND**

Plaintiff William Peck worked for Defendant City of Tucson from 2014-2019 as an I.T. administrator. He filed a Second Amended Complaint on April 3, 2020, alleging that the City discriminated against him in the terms and conditions of his employment based on his sex in violation of Title VII. (Doc. 22.) Plaintiff alleges a hostile work environment and retaliation. After the close of discovery, Defendant filed a motion for summary judgment as to both claims.

## **SUMMARY JUDGMENT STANDARD**

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the

motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not produce evidence of a genuine issue of material fact but may satisfy its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

**FACTS**

Defendant submitted a Statement of Facts and Plaintiff submitted a Controverting Statement of Facts, as required by this District's Local Rules. LRCiv 56.1(a), (b). For Plaintiff to dispute a fact presented by Defendant, he must show that the cited materials do not establish the absence of a genuine dispute, demonstrate that the evidence cited is not admissible, or cite to contrary record evidence such as depositions, documents, or declarations. Fed. R. Civ. P. 56(c). Plaintiff disagreed or objected to some extent to the facts set forth in Defendant's paragraphs 9, 12, and 14. (Doc. 42 ¶¶ 9, 13, 15.) However, Plaintiff provided no evidentiary support for his disagreement. (*Id.*) Therefore, the Court accepts Defendant's statements in those paragraphs, which the City supported with admissible evidence. (Doc. 33 ¶¶ 9, 12, 14.) As to Defendant's paragraphs 13 and 15-18, Plaintiff stated that there was nothing to agree or disagree with in the statements. (Doc. 42 ¶¶ 14, 16-19.) Those paragraphs are based on a declaration by John Burross and exhibits thereto. (Doc. 33, Ex. A.) Because Plaintiff has offered no controverting facts

supported by evidence in the record, there is not a material factual dispute as to their content and the Court accepts them as undisputed.

Plaintiff references four exhibits in his Controverting Statements of Facts. In paragraph 9, he references a recording attached as Exhibit A; in paragraph 10, he references evaluations that evidence his stellar work (prior to 2017) and cites an Exhibit 1; in paragraph 21, he cites Exhibit 1 as evidence that "Plaintiff was terrorized by Defendant for months and about a of [sic] several months if not an entire year"; and, in paragraph 22, Plaintiff cites a Notice of Intent to Discharge filed as Exhibit 2. (Doc. 42.) The only evidence Plaintiff submitted was the Notice of Intent to Discharge, attached to his Controverting Statement of Facts as Exhibit A. (Doc. 42, Ex. A.) It is unclear if the references to other exhibits was an error or if counsel erred in failing to attach intended documents. After completing its review of the filed materials, the Court concluded that additional exhibits of the type referenced in Plaintiff's Controverting Statement of Facts would not alter the Court's decision. For that reason, the Court did not believe offering Plaintiff the opportunity to supplement his filing was warranted. Below, the Court sets forth the undisputed facts established by the parties' statements of fact.

In Fall 2014, Plaintiff heard Mr. Herring state that a female co-worker's "dress showed a lot of skin [and] her hair flowed over her shoulders in a sexy fashion." In that same meeting, Plaintiff also heard Mr. Herring state, of another female co-worker, that "he didn't understand the need for a woman in her late 40's to have braces on her teeth because it wasn't like she was going to get married and have children at that point." (Doc. 22 ¶ 12;[1] Doc. 33 ¶ 1; Doc. 42 ¶ 1.) At three IT manager's meetings in 2017 (on or about June 21, July 5, and July 19), Mr. Herring "referred to plaintiff as 'Pecker,' an obvious sexual reference to a commonly known nickname for 'penis'" and also "joked to Peter Johnson, an IT supervisor, stating something along the lines of Peter Johnson's name

---

[1] Defendant cited the wrong paragraph number from the Second Amended Complaint numerous times. Plaintiff did not object on that basis and the Court corrected the citations for this Order.

being two words for 'penis.'" (Doc. 22 ¶¶ 20-22; Doc. 33 ¶ 3; Doc. 42 ¶ 3.) At the third meeting, Mr. Herring told the attendees that "making those sorts of jokes was inappropriate, as they had all just been reminded by Human Resources." (Doc. 22 ¶ 23; Doc. 33 ¶ 3; Doc. 42 ¶ 3.) During a one-on-one meeting with Mr. Herring, in late July or early August 2017, Mr. Herring addressed Plaintiff as "Bill Pecker" and went on to state, "I know you have a friend named Glasscock" and "I wonder what his wife thought about his glass cock." (Doc. 22 ¶ 24; Doc. 33 ¶ 5; Doc. 42 ¶ 5.)

During a one-on-one meeting, on or about August 25, 2017, Plaintiff reminded Mr. Herring that he had an upcoming procedure to treat back pain that would cause him to miss work. In response, Mr. Herring described another employee who just dealt with his back pain, adding, "Why can't you just be a man like Kurt and suck it up?" (Doc. 22 ¶ 25; Doc. 33 ¶ 6; Doc. 42 ¶ 6.) Plaintiff filed a formal internal complaint about Mr. Herring with the City's Office of Equal Opportunity Programs on September 21, 2017. (Doc. 22 ¶ 32; Doc. 33 ¶ 7; Doc. 42 ¶ 7.)

On February 27, 2018, the Director of the IT Department issued a directive to all IT Department management, including Plaintiff, regarding work hours and time recording procedures. (Doc. 33, Ex. A ¶ 7.) The directive stated: "All ITD management should align their work hours to mirror the Cities [sic] often mentioned business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday. You should start your workday (in office) between 7:00 a.m. and 8:00 a.m. daily." (Doc. 33, Ex. A to Ex. A.)

John Burross became Plaintiff's direct supervisor in December 2017 and was responsible for providing Plaintiff with feedback as necessary and an annual written performance appraisal. (Doc. 33, Ex. A ¶ 6.) According to Plaintiff, beginning in February 2018, Mr. Burross "became extremely critical" and commented: "I'm very frustrated," "you're not following my directions," and "you're not doing what I asked you to," etc. (Doc. 33, Ex. B at 9-10; Doc. 33 ¶ 10; Doc. 42 ¶ 11.) In March 2018, Plaintiff received a "Document of Verbal Counseling" from Mr. Burross memorializing

- 4 -

the content of an in-person counseling session. (Doc. 33, Ex. A ¶¶ 8-9.) A Document of Verbal Counseling, a tool used by Mr. Burross with all his direct reports, is a written summary of a verbal counseling session used to ensure that feedback regarding expectations, procedures, and standards of conduct is clearly communicated and documented in writing. (*Id.*) The three topics of the counseling session were: (1) the importance of, and process for, reporting after-hours service interruptions to the service desk; (2) how to track service interruptions in a status report; and (3) the importance of, and process for, marking unscheduled leave in the City's time management software. (*Id.* ¶ 8).[2] Subsequently, Mr. Peck sent emails to the IT Department Director, David Scheuch, requesting a meeting to discuss the verbal counseling because he felt he had been singled out for simple clerical errors and "insanely silly reasons." (Doc. 33, Ex. A ¶ 10 & Ex. B.)

As required by City policy, Mr. Burross completed an annual performance appraisal of Plaintiff in June 2018. (Doc. 33, Ex. A ¶¶ 11, 12; Exs. C, D.) Mr. Burross based Plaintiff's appraisal on his professional judgment, personal observations, and feedback from coworkers. (Doc. 33, Ex. A ¶ 13.) The appraisal noted numerous skills and positive attributes; however, Plaintiff was given an overall "needs improvement evaluation because he had mixed results in meeting expectations and goals for the year and was resistant to feedback from management and his peers.[3] (*Id.*, Ex. A ¶ 14; Ex. B at

---

[2] Plaintiff objected to Defendant's fact statements that relied upon paragraphs 8 and 9 of Mr. Burross's declaration. First, Plaintiff argued that Mr. Burross's statements did not establish what actually happened. (Doc. 42 ¶ 12.) If Plaintiff wanted to dispute Mr. Burross's version of events, he was required to submit admissible evidence showing a genuine issue of fact. Fed. R. Civ. P. 56(c). He did not do so. Second, Plaintiff contends that Mr. Burross's declaration has not been subject to examination by the Court. (Doc. 42 ¶ 13.) Although party declarations are often self-serving, a court may rely upon them if they are not conclusory and contain admissible facts based on personal knowledge. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015). Mr. Burross's declaration satisfies this requirement and Plaintiff has not argued otherwise.

[3] Defendant's Fact Statement 18 provided: "Plaintiff felt 'this evaluation was full of demonstrably false and misleading statements that were more of a personal attack on my abilities and my character' and constituted 'a clear and deliberate attempt to destroy my reputation.' (Ex. B at 14)." (Doc. 33 ¶ 18.) Neither Exhibit B nor any other attachment to Defendant's Statement of Facts supports this statement. Plaintiff did not object on that basis; however, the Court does not include it as Defendant failed to provide supporting evidence.

4.) On July 24, 2018, Plaintiff sent an email to Mr. Burross stating: "And when I disagree with you, you immediately claim I have trouble accepting management. That is not the case. I have trouble accepting poor management." (Doc. 33, Ex. E to Ex. A.)

On January 9, 2019, Defendant issued to Plaintiff a Notice of Intent to Discharge, which scheduled a review meeting and offered Plaintiff the opportunity to present reasons to dispute the proposed action. (Doc. 42, Ex. A.)

## **DISCUSSION**

Plaintiff has alleged that his employer discriminated against him based on his sex, which is prohibited by Title VII. 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleged two forms of discrimination, hostile work environment and retaliation.

### **Hostile Work Environment / Sexual Harassment**

"An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1109-10 (9th Cir. 2000) (quoting *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999)); *see also Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) ("teasing, offhand comments, and isolated incidents" are not sufficient). A plaintiff must establish that he believed the conduct to be abusive and that a reasonable person would find it so; thus, the working conditions must be subjectively and objectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The Court finds two factors to be dispositive of this claim: whether the conduct in question was gender-based, and if it was sufficiently pervasive to qualify as a hostile work environment.

### Was the Conduct Based on Plaintiff's Sex?

When evaluating same-sex harassment, the Court must keep in mind that a Title VII claim requires that "members of one sex [were] exposed to disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993). Plaintiff did not offer evidence to satisfy any of the types of same-sex harassment articulated in *Oncale*, 523 U.S. at 80-81 – same-sex sexual desire, general hostility to members of one's own sex, or lesser treatment of workers of the same sex as the harasser. Nor did Plaintiff offer evidence of same-sex discrimination of another type. Plaintiff argued that Mr. Herring's comments were of a sexual nature and were "sexually charged commentary." That comments involve offensive sexual connotations does not in itself establish sex-based discrimination. *Id.* at 81 (requiring a plaintiff to "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted 'discrimina[tion] . . . because of . . . sex.'") As set forth in the facts, in a prior year, Plaintiff overheard Mr. Herring offer sexually tinged commentary about female employees as well. The mere nature of Mr. Herring's statements does not in itself demonstrate that he discriminated against Plaintiff because he was male.

Second, Plaintiff argues that Mr. Herring discriminated against him for failing to conform to male stereotypes. Specifically, that Plaintiff's use of medical leave due to back pain was considered unmasculine by his supervisor. If Mr. Herring harassed Plaintiff "because of" his gender or failure to conform with a male stereotype (even if there were other factors), that would be sufficient to establish that the harassment was based on his sex. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989); *see Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, (9th Cir. 2001) (applying *Price Waterhouse's* holding, that actions based on sex stereotyping qualify as discrimination based on gender, to a man's claim of harassment for behavior deemed too feminine).

As evidentiary support, Plaintiff cites the June 21, July 5, and July 19, 2017 meetings, during which Mr. Herring referred to him as pecker in front of numerous other employees. Also, he cites the one-on-one meeting, several weeks later, in which Mr. Herring referred to him as Bill Pecker and remarked on his friend's name of Glasscock. And, in late Summer 2017, in response to a reminder that Plaintiff would be absent for a

procedure to treat his back pain, Mr. Herring asked, "Why can't you just be a man like Kurt and suck it up?"[4] Only the last incident, on its face, indicates that Mr. Herring's actions were based on Plaintiff failing to conform to a male stereotype (presumably of not exhibiting physical weakness).

Plaintiff made a conclusory statement that the pecker references amounted to sex-stereotyping but did not explain the basis for this argument. Absent other evidence or explanation, the Court sees no use of a male stereotype in Mr. Herring referring to Plaintiff with a slang term for a penis. Mr. Herring made a related reference to another employee, and Plaintiff presented no basis to conclude he was using a stereotype also as to Peter Johnson. Mr. Herring's comments are in stark contrast to those at issue in *Nichols*, where other employees referred to the plaintiff with female pronouns, mocked his body movements, and called him sexually offensive terms for a woman. *See Nichols*, 256 F.3d at 870. While Mr. Herring's remarks may have been inappropriate, they do not reveal discriminatory conduct based on Plaintiff's gender.

<u>Was the Conduct Severe or Pervasive?</u>

The Court must evaluate the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787-88 (quoting *Harris*, 510 U.S. at 23). Title VII is not a "general civility code"; thus, "the sporadic use of abusive language, gender-related jokes, and occasional teasing" do not reach the extreme level required to state a claim. *Id.* at 788 (quoting *Oncale*, 523 U.S. at 80; B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

Mr. Herring's conduct amounts merely to sporadic offensive comments. Mr. Herring's singular remark based on gender was a one-off teasing remark that did not rise to the level of a hostile work environment. Even if the Court considered the other

---

[4] In his response brief, Plaintiff asserts that the alleged harassment began after Plaintiff sought time off under the Family and Medical Leave Act for neck and back problems, in May 2017. (Doc. 38 at 5.) The Court does not rely upon this factual assertion because Plaintiff failed to provide any evidentiary support for it.

- 8 -

remarks, the conduct was not sufficiently extreme to state a claim. Although the pecker references could have been embarrassing or even humiliating, the remarks did not constitute severe discriminatory conduct. Plaintiff cites five remarks made over a two-month period, which is not at a frequency level that evidences extreme conduct. *Cf. Nichols*, 256 F.3d at 874 (noting Plaintiff was subjected to remarks every week and sometimes multiples times a day). Additionally, Plaintiff presented no evidence that Mr. Herring's treatment of him interfered with his ability to perform his work. And, other than the fact of his lawsuit, he has not averred that he found the conduct offensive.

Plaintiff argued that it is important to examine the "social aspects of different workplace situations"; however, he has presented no evidence on point. He argues only that a management-level employee with the City should not be subjected to "any sexually charged commentary from a supervisor." That is not the standard for a Title VII claim, which protects an employee only from extreme conduct not gender-based jokes or sporadic abusive language. Mr. Herring's conduct did not rise to the level of a hostile workplace under the law.

Conclusion

Plaintiff established only one action by Defendant based on a gender stereotype. That singular remark was not severe or pervasive and was insufficient to establish a hostile work environment in violation of Title VII. The remaining remarks were not based on Plaintiff's sex and were not the type of severe or pervasive conduct Title VII was intended to protect against. Therefore, Plaintiff has failed to establish a hostile work environment based on sexual harassment as alleged in Claim 1. Because there is no genuine issue of fact, Defendant is entitled to summary judgment on this claim.

**Retaliation**

Plaintiff alleges he was retaliated against for opposing Defendant's conduct and filing a charge of discrimination. To prove a retaliation claim, Plaintiff must show that he engaged in a protected activity, he was subjected to an adverse employment decision, and the adverse action was causally linked to his protected activity. *See Hashimoto v. Dalton*,

118 F.3d 671, 679 (9th Cir. 1997). Defendant argues Plaintiff cannot meet any of the three required elements for a retaliation claim.

In its summary judgment motion, Defendant chronicled six internal complaints filed by Plaintiff with the City. (Doc. 32 at 2-6.) In response, Plaintiff agreed that he filed internal complaints on the identified dates and asserted that he also filed an August 2018 complaint with the Arizona Civil Rights Division. (Doc. 38 at 11-12.) Plaintiff contends all the complaints constitute "protected activity" (*id.*), while Defendant argues none of them qualify (Doc. 32 at 13-14). Neither party submitted any evidentiary support to substantiate the content of the complaints. For that reason, the Court does not evaluate whether Plaintiff engaged in protected activity. Instead, the Court finds the retaliation claim is most expediently resolved by assessing whether Plaintiff was subjected to any adverse employment action.

Plaintiff alleges the following adverse employment actions: (1) his work schedule was changed; (2) his supervisor was extremely critical and gave him a verbal counselling; (3) he received a needs improvement annual appraisal; (4) his work location was moved to another building; and (5) Defendant issued him a January 9, 2019 Notice of Intent to Discharge. (Doc. 32 at 15; Doc. 38 at 12-13.)

"[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Trivial employment actions that would not have a deterrent effect do not qualify; however, examples of qualifying actions are "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000). Whether a particular action by an employer "is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's

position, considering all the circumstances.'" *Burlington*, 548 U.S. at 71 (holding that reassignment of job duties not automatically actionable but materially adverse when evidence shows new duties were more arduous, less prestigious, and considered a lesser job) (quoting *Oncale*, 523 U.S. at 81).

Plaintiff argues that Defendant erred in summarily dismissing the alleged adverse actions. However, in response, Plaintiff offered no case law to support finding that Defendant's actions qualified as adverse employment actions. Additionally, Plaintiff argues that retaliation claims must be evaluated within the context in which they occurred, considering the totality of the circumstances. While true, Plaintiff has offered no context for the adverse actions upon which he relies. Thus, the Court's evaluation must be premised on the mere fact of certain employer actions and the limited context provided by Defendant. The Court reviews the five alleged actions individually.

Work Schedule

All managers in Plaintiff's department were informed, in February 2018, that they needed to arrive at work between 7 and 8 a.m. Plaintiff has presented no evidence to demonstrate that this constituted a change in his schedule; however, Defendant accepts his allegation that he previously had been arriving at work at 9 a.m. Typically, a change in schedule will not constitute an adverse employment action. *See Arakaki v. Brennan*, 771 F. App'x 783, 784 (9th Cir. 2019). The Supreme Court has recognized, however, that a schedule change could be adverse to a particular employee facing specific circumstances. *See Burlington*, 548 U.S. at 69 (citing, in dicta, a mother with school-age children as an example). Plaintiff alleged in the Second Amended Complaint that, for four years prior to February 2018, he had permission to begin work at 9:00 a.m. in order to take his daughter to school. (Doc. 22 ¶ 48.) However, in responding to the motion for summary judgment, Plaintiff did not substantiate this allegation with evidence or provide other evidence to demonstrate that a schedule change was adverse based on his particular circumstances. Absent such evidence, there is no basis to find that a reasonable employee would have found the schedule change to be materially adverse.

### Supervisor Criticism & Verbal Counselling

Defendant accepts Plaintiff's allegation that his supervisor was critical of him and conducted a verbal counselling. Plaintiff offered no evidence that the criticism or counselling led to further consequences or impacted the terms of his employment. The Ninth Circuit and this Court have held that "scolding" or criticizing an employee does not qualify as an adverse employment action. *Nunez v. City of Los Angeles*, 147 F.3d 867, 874 (9th Cir. 1998); *Hellman v. Weisberg*, No. CV-06-1465-PHX-FJM, 2007 WL 4218973, at *6 (D. Ariz. Dec. 3, 2007), *aff'd*, 360 F. App'x 776 (9th Cir. 2009).

### Annual Appraisal

Plaintiff's supervisor rated him "needs improvement" on his annual performance appraisal. Plaintiff has offered no evidence that the evaluation was unfounded or that Defendant relied upon the evaluation in making decisions impacting the terms of Plaintiff's employment. A mediocre performance evaluation, standing alone, is not an adverse employment action. *See Lyons v. England*, 307 F.3d 1092, 1118 (9th Cir. 2002); *Hardin v. Wal-Mart Stores, Inc.*, 604 F. App'x 545, 548 (9th Cir. 2015) (finding a negative evaluation that was not relied upon to alter the terms of employment was not an adverse employment action).

### Change in Work Location & Department

In responding to the motion, Plaintiff alleged that his work location was moved to a different department in another building. First, Plaintiff did not provide any evidence to establish that a transfer of work location occurred. Second, because he provides no contextual information, there is no basis to find that it was an adverse employment action to move his work location. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (requiring nonmoving party to oppose a motion for summary judgment with "affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial,'" because mere denials or allegations are insufficient) (citing Fed. R. Civ. P. 56(e)). In the abstract, there is no ground to find that working in a different building or department is materially adverse to a reasonable employee. *See Nidds v. Schindler Elev.*

*Corp.*, 113 F.3d 912, 915, 919 (9th Cir. 1996) (finding departmental transfer, without change in compensation, not an adverse employment action).

### Notice of Intent to Discharge

In January 2019, Defendant issued to Plaintiff a Notice of Intent to Discharge, which included setting a meeting and the opportunity to refute the proposed action. Plaintiff offered no additional evidence regarding this Notice, such as whether it was unfounded or if subsequent actions were taken by Defendant with respect to Plaintiff's employment. Without more, a threatened dismissal is not an adverse employment action. *See Nunez*, 147 F.3d at 874; *Hellman*, 2009 WL 5033643, at *2; *Martines v. Las Vegas Metro. Police Dep't*, No. 2:12-CV-01441-LDG, 2014 WL 1307235, at *5 (D. Nev. Mar. 28, 2014) (finding a pre-termination hearing notice did not qualify as an adverse employment action).

### Conclusion

Plaintiff has not established that he was subjected to an adverse employment action for engaging in protected activity. Therefore, Plaintiff has failed to establish that Defendant retaliated against him in violation of Title VII as alleged in Claim 2. Because Plaintiff has not demonstrated a genuine issue of fact, Defendant is entitled to summary judgment on this claim.

Accordingly,

**IT IS ORDERED** that Defendant City of Tucson's Motion for Summary Judgment (Doc. 32) is **GRANTED**. The Clerk of Court should enter judgment for Defendant and close this case.

Dated this 4th day of January, 2021.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge